**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

|  |  |
|---|---|
| Amantur Mozhubaev,<br>Plaintiff<br>-vs-<br>Luis Rosa, Jr.,<br>Defendant. | CV-26-0505-PHX-DJH (JFM)<br><br>**Report & Recommendation** |

## I.  MATTER UNDER CONSIDERATION

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1).  The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case are undisputed.  Petitioner is a citizen and national of Kyrgyzstan, who entered the United States to seek asylum on December 10, 2024.   He was detained and placed into expedited removal proceedings and was granted a "credible fear" interview.  The asylum officer found a credible fear and Petitioner was placed in removal proceedings.  Petitioner proceeded to a hearing with an immigration judge (IJ) on May 15, 2025 and was granted withholding of removal.  The Department of Homeland Security (DHS) appealed the IJ's decision to the Board of Immigration Appeals (BIA) That appeal is still pending.  Petitioner has remained detained since December 10, 2024. (Petition at ¶¶ 1-6; Response at 1-2.)

- 1 -

**B.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition & Motion** - Petitioner, detained at the time of the Petition in the Central Arizona Correctional Complex, commenced the current case by filing through counsel his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on January 27, 2026 (Doc. 1).  "Petitioner challenges his ongoing detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), alleging that his removal is not significantly likely to occur within the reasonably foreseeable future."  (Service Order 1/28/26, Doc. 5 at 1-2.)

Petitioner filed with his Petition a Motion for Temporary Restraining Order  (Doc. 2) seeking immediate release.

The Court ordered a response to the Petition and Motion.  (Order 1/28/26, Doc. 5.)

**Response** - On February 4, 2026, Respondents filed their Response (Doc. 7) to the Petition and Motion, arguing that Petitioner is detained under 28 U.S.C. § 1225(b), his order of removal is not final and thus his detention is not pursuant to 8 U.S.C. § 1231 (the statute at issue in *Zadvydas*), and *Zadvydas* does not apply, and Petitioner has no statutory or constitutional right to release.

**Reply** - On February 18, 2026 Petitioner filed a Reply (Doc. 8).  Petitioner argues that even if he is detained under § 1225(b), and Respondents fail to address whether due process requires his release or at least a consideration of release once his "detention becomes unreasonably prolonged"

### III.  APPLICATION OF LAW TO FACTS
**A.  DETENTION UNDER 1225(B) PROPER**

In *Casas-Castrillon v. DHS*, 535 F.3d 941 (9th Cir. 2008), the court observed that "the Attorney General's authority over an alien's detention shifts as the alien moves through different phases of administrative and judicial review." *Id.* at 945.  Generally these phases include the period before there is a final removal order, a post-removal-order "removal period," and subsequent thereto.

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court summarized the pre-removal detention statutes applicable to aliens seeking admission, such as Petitioner:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).

583 U.S. at 289.[1]  The detention statute provides:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding

8 U.S.C. § 1225(b)(2)(A).

The *Jennings* Court summarized:

> That process of [deciding who may enter and/or stay in the country] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under [ ] 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).
> * * *
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

*Jennings*, 583 U.S. at 287-288.  Thus, any parole from detention under § 1225 arises only under § 1182(d)(5) under the discretion of the Secretary.

---

[1] In responding to the TRO motion, Respondents cited to the recent decision in *Buenrostro-Mendez v. Bondi*,166 F.4th 494, 508 (5th Cir. 2026). (Doc. 16 at 3.) *See also Avila v. Bondi*, 2026 WL 819258 (8th Cir. Mar. 25, 2026). *Cf. Rodriguez v. Warden, Golden State Annex,* 2026 WL 673401 (E.D. Cal. Mar. 10, 2026), report and recommendation adopted *sub nom. Rodriguez v. Warden*, 2026 WL 688925 (E.D. Cal. Mar. 11, 2026) (detailing disagreements with *Buenrostro-Mendez*). That Fifth Circuit's decision in that case is inapposite here.  It decided only whether aliens who have gained entry (albeit illegally) and surreptitiously remained in the country could nonetheless be deemed to be "seeking admission," and thus subject to mandatory detention under § 1225(b).  Here, Petitioner admits he actually sought admission, not that he has merely been deemed to be seeking it.

Here, Petitioner's removal order is not final, but instead remains pending before the BIA.  Accordingly, his detention is authorized by § 1225(b) and there is no suggestion a discretionary release has been afforded him under § 1182(d)(5).

## B.  LIMITED CONSTITUTIONAL RIGHTS

Petitioner argues that he is entitled to release (or at least a bond hearing) under the Due Process Clause of the Fifth Amendment to the United States Constitution.  He asserts this Court should apply the general standard for evaluating due process claims under *Mathews v. Eldridge*, 424 U.S. 319 (1976) (balancing individual's liberty interest, risk of erroneous deprivation, and government's interests), and conclude that he is entitled to an individualized determination (i.e. a hearing) at which the government would be required to make a showing of the risks of his release and the government's interest in limiting those risks by keeping him detained.

Petitioner's argument presumes he is entitled to the ordinary protections of the Due Process Clause.  The Supreme Court says he is not.

In *Shaughnessy v. United States ex rel. Mezei*, the petitioning alien had (after a period of residence) left the United States and spent 19 months "behind the iron curtain" before attempting to return to the U.S.  The Court found he was not challenging his exclusion, just his continued detention on Ellis Island because other countries would not take him.  345 U.S. 206, 207 (1953).  The *Mezei* Court quoted a 1950 case for the proposition that while aliens who had already "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law...But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry to the country is concerned.'" *Mezei*, 345 U.S. at 212 (quoting U.*S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).  The Court went on to determine whether Mezei could be detained indefinitely on Ellis Island, concluding that Mezei was not deprived of "any statutory or constitutional right."  345 U.S. at 215-

- 4 -

216.

In *Dep't of Homeland Sec. v. Thuraissigiam*, the Supreme Court discussed the due process rights of arriving aliens seeking admission. "[A]s to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"591 U.S. 103, 138 (2020) (quoting *Nishimura Ekiu v. U.S.*, 142 U.S. 651, 660 (1892)). It is true that the facts of *Thuraissigiam* were limited to a challenge to the admission decision, and were so disconnected from detention that the *Thuraissigiam* court found no basis for habeas jurisdiction, and the decision contains no language extending its holding beyond the admission decision. However, the Court's analysis is a demonstration of the enduring authority of *Mezei*.

**No Controlling Contrary Authority** - Petitioner's arguments provide no basis for avoiding *Mezei*.

In his Reply, Petitioner argues § 1225(b) imposes "*indefinite* detention." (Doc. 8 at 2.) This argument was rejected in *Jennings*. "§§ 1225(b)(1) and (b)(2), unlike § 1231(a)(6), provide for detention for a specified period of time." *Jennings*, 583 U.S. at 299. Iin particular, "that detention must continue until immigration officers have finished consider[ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." *Id.* To be sure, the time for that to occur cannot currently be calculated or scheduled. But it does not mean it is without an identifiable end.

In support of his argument, Petitioner points to *Lopez v. United States Dep't of Homeland Sec.*, CV-20-1063-PHX-JJT-MTM, 2021 WL 2079840 (D. Ariz. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 2075733 (D. Ariz. May 24, 2021). There, Magistrate Judge Morrissey observed "§ 1225(b)(1) does not allow for indefinite detention, i.e., where removal or release is not "reasonably foreseeable." *Id.* at *3. But that proposition was based on dicta in *Rodriguez v. Marin* ("Rodriguez IV"), 909 F.3d 252

(9th Cir. 2018), where the Ninth Circuit observed:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted). As Justice Breyer wrote in *Rodriguez*,
>
> > The Fifth Amendment says that "[n]o person shall be ... deprived of life, liberty, or property without due process of law." An alien is a "person." To hold him without bail is to deprive him of bodily "liberty." And, where there is no bail proceeding, there has been no bail-related "process" at all. The Due Process Clause—itself reflecting the language of the Magna Carta—prevents arbitrary detention.
>
> 138 S.Ct. at 861 (Breyer, J., dissenting) (alteration in original) (citations omitted).

*Rodriguez IV*, 909 F.3d at 256–57 (9th Cir. 2018).

Ninth Circuit Judge Bumatay (concurring in denial of pre-removal order bond for *deportable*[2] aliens under § 1226)  addressed the above dicta from *Rodriguez IV*, and observed:

> Absent any allegation that the extended detention here is unrelated to an immigration purpose, the mere fact that detention is "prolonged" doesn't alter the statutory framework. Indeed, in our circuit, the median processing time for an immigration case to reach a merits determination is 39 months. Does that mean that any immigration proceeding appealed in the Ninth Circuit would automatically invalidate mandatory detention under § 1226(c)? Why should our delays in processing cases impact Congress's design? And dicta from *Rodriguez v. Marin* isn't a basis to rule otherwise. First, the *Rodriguez* order was written after **the Supreme Court expressly rejected our**

---

[2] "The United States immigration laws have long distinguished between deportable aliens and excludable aliens. A deportable alien is one who has entered the country; an excludable alien is one who seeks to enter the country." *Sharma v. Reno*, 902 F. Supp. 1130, 1135 (N.D. Cal. 1995) (citations omitted).  The 1996 immigration act, IIRIRA, adopted a new term that merged portions of the deportation and exclusion processes into "removal." "IIRIRA changes somewhat the nomenclature applicable to immigration cases. What used to be "excludability" is now "inadmissibility"; what used to be "deportation" is now "removal." We use these terms interchangeably. *Abebe v. Mukasey*, 554 F.3d 1203, 1205 (9th Cir. 2009).

**view that immigration statutes must allow for individualized bond** hearings after detentions become prolonged. 909 F.3d at 255. Second, *Rodriguez's* musings were mainly **justified by a criminal law ruling**. *Id.* at 256–57 (quoting *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). But that's irrelevant when it comes to immigration law. *See Demore*, 538 U.S. at 521 [ ]. Third, *Rodriguez* cites *Zadvydas v. Davis*, 533 U.S. 678, 690 [ ] (2001), for the proposition that "[c]ivil detention" violates due process outside of "certain special and narrow nonpunitive circumstances." *Rodriguez*, 909 F.3d at 257 (simplified). But ***Zadvydas* only holds that immigration detention must "serve its purported immigration purpose,"** *Demore*, 538 U.S. at 526, 123 S.Ct. 1708, and there is no argument that the detention of criminal aliens serves no immigration purpose. Finally, *Rodriguez* quotes at length Justice Breyer's dissenting opinion in *Jennings v. Rodriguez*, 583 U.S. 281, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). *Rodriguez*, 909 F.3d at 257 (quoting *Jennings*, 583 U.S. at 330 [ ]) (Breyer, J., dissenting). But respectfully, **a dissenting view is no reason to upset congressional will**.

In contrast, *Rodriguez* ignored the **long history of deference to the political branches in administering the immigration system**. *See Demore*, 538 U.S. at 538–40 [ ] (O'Connor, J., concurring); *Rodriguez Diaz*, 53 F.4th at 1215–18 (Bumatay, J., concurring). Thus, no extra bond hearing was due here.

*Martinez v. Clark*, 124 F.4th 775, 788 (9th Cir. 2024) (Bumatay, J., concurring) (emphasis added). While Judge Bumatay's reasoning may not be entirely convincing, it does indicate that the dicta in *Rodriguez IV* was not the law.

As noted by Judge Bumatay, in an earlier appeal in the same case as *Rodriguez IV, i.e.* in *Rodriguez v. Robbins* ("Rodriguez II"), 715 F.3d 1127 (9th Cir. 2013), the Ninth Circuit addressed in a class action the concerns that prolonged detention under §§ 1225(b) and 1226(c) without a bond hearing would be "constitutionally doubtful," and thus construed the statutes to require bond hearings after six months. But that case was reversed by the Supreme Court in *Jennings,* finding unsupportable the Ninth Circuit's attempts to employ "constitutional avoidance" to write in limitations on detention under those sections, and remanding for further proceedings on the underlying constitutional claims. *Jennings*, 583 U.S. at 312.

Moreover, in so doing, the Supreme Court in *Jennings* recognized that "*some* members of the certified class may not be entitled to bond hearings as a constitutional matter," and cited to *Mezei,* and cited portions of Rodriguez II and III where the Ninth Circuit had already acknowledged such a limitation citing *Mezei*. *Id.* at 313.

- 7 -

In sum, neither the Supreme Court nor the Ninth Circuit have any remaining precedent deviating from *Mezei*'s limitation on the due process rights of admission-seeking aliens to be released from detention under § 1225(b). *Cf. Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995) (finding no constitutional limitation on prolonged detention of excludable aliens even post removal order, relying in part on *Mezei*).[3]

The undersigned is aware that other district judges in the Ninth Circuit have reached the opposite conclusion. *See  Avakian v. Cantu*, CV-26-00104-PHX-SHD-CDB, Report and Recommendation, Doc. 17 at 18-19 (D.Ariz. 2026), adopted 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (detailing cases).

But at least some judges in this District have found no due process limitation on detention under § 1225(b).  *See e.g. Ibarra-Perez v. Howard*, CV-20-0739-PHX-DWL, 468 F. Supp. 3d 1156, 1177 (D. Ariz. 2020) (finding no limitation on detention of admission-seeking alien during removal proceedings); *Munoz v. Bondi*, CV-25-02951-PHX-MTL, 2026 WL 380610, at *1 (D. Ariz. Feb. 11, 2026) (same, citing *Thuraissigiam*'s reference to rights limited to those provided by statute); *Korneva v. Rokosky*, CV-26-01505-PHX-MTL, 2026 WL 851591, at *1 (D. Ariz. Mar. 11, 2026) (same).  *Cf. Avakian v. Cantu*, CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (finding opposition to claim of due process violation from prolonged detention under § 1225(b) waived by failure to raise in response).

Accordingly, the undesigned concludes that Petitioner has no due process right to release from his current detention under § 1225(b),[4] except as provided by Congress, *e.g.* under 8 U.S.C. § 1182(d)(5).  Thus, the Court need not consider the application of the *Matthews* factors or other due process analyses, to determine whether the facts of

---

[3] In *Xi v. I.N.S.,* 298 F.3d 832, 837–38 (9th Cir.2002) the Ninth Circuit observed that insofar as *Barrera* extended to post-removal detention, it has been superseded by the adoption 8 U.S.C. § 1231.

[4] When Petitioner has a final order of removal, and his detention shifts to § 1231(a)(6), the limitations in *Xi* may apply to afford him a right to a bond hearing.

Petitioner's case justify release. Therefore, the Petition must be denied.

**"As Applied" Challenge** - Finally, Petitioner argues in his Reply that any reliance on *Jennings* is improper because his challenge is an "as applied" challenge in an individual case, and *Jennings* did not address an "as applied" claim.   (Reply at 3-4.)  Petitioner cites no authority for this proposition.

"A facial challenge requires a plaintiff to establish that no set of circumstances exists under which a statute would be valid. An as-applied challenge, by contrast, focuses on the statute's application to the plaintiff."  *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1217 (9th Cir. 2020).

Contrary to Petitioner's contention, *Jennings* was not a facial challenge.  Rather it was an "as applied" challenge raised by various subclasses of detained immigrants held pre-removal-order under §§ 1225 or 1226.  *Jennings*, 583 U.S. at 290-291.  The class was defined as:  "[A]ll non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified." *Jennings*, 583 U.S. at 290.  Moreover, at the time of the Supreme Court's 2018 decision, the named claimant, Alejandro Rodriguez, had been detained since 2004, some 14 years. *Id.*   Petitioner proffers no reason why his circumstances are so unique from the *Jennings* class that they would call for a different result from that reached in *Jennings*.

Moreover, *Mezei* controls this case, not *Jennings*.  *Jennings* declined to address the underlying constitutional issues, and was limited to the statutory construction issues. In contrast, *Mezei* decided the underlying constitutional issue, i.e. the application of the Due Process Clause to detention of an excludable alien, and concluded it was limited to the processes provided by Congress.

/ /

/ /

## C. *ZADVYDAS* INAPPLICABLE

Petitioner relies primarily on *Zadvydas* (habeas challenge to post-removal order detention) to support his claim. However, in *Zadvydas,* the Court distinguished *Mezei* in finding a right to a detention hearing for aliens post-removal order. The Court discussed Mezei's status as an "arriving alien" deemed "stopped at the border." *Zadvydas*, 533 U.S. at 693-694 ("this Court's …rejection of his challenge to continued detention rested upon a basic territorial distinction," *i.e.* his detention on Ellis Island was not a "landing") (citing *Mezei,* 345 U.S. at 215). With that distinction in mind, the *Zadvydas* Court held that for deportable aliens, who had effected an entry, post-removal order detention without a bond hearing was limited, and created a six month window in which continued detention was presumptively constitution. In *Xi v. U.S. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002), the Ninth Circuit recognized *Mezei* describes the limits of due process rights of arriving aliens regarding detention, but found *Zadvydas*'s constitutional construction of § 1231(a)(6) to apply to all post-removal order aliens, including arriving aliens.

Of course, here, Petitioner is not being detained post-removal order pursuant to § 1231(a)(6). Rather, his removal is still being adjudicated administratively. Thus his current detention is pursuant to 8 U.S.C. § 1225(b). Accordingly, the statutory provision construed by *Zadvydas*, and applied in *Xi*, has no application to Petitioner.

Indeed, in *Jennings* the Court declined to extend *Zadvydas* to an inadmissible alien, because: (1) detention under § 1225(b) has a definite term (completion of proceedings); (2) the detention is statutorily mandated, rather than permissive, and thus not ambiguous; and (3) unlike § 1231(a)(6) detention, detention under § 1225(b) is subject to exceptions, namely § 1182(b)(5). *Jennings*, 583 U.S. at 299-301. (The *Jennings* Court reached similar conclusions with respect to detention under § 1226. *Id.* at 303-306.) Thus the Court found no opportunity to apply the constitutional avoidance canon employed in *Zadvydas*.

## D. CONCLUSION RE DETENTION

Based on the foregoing, the undersigned concludes that Petitioner is properly

- 10 -

detained under § 1225(b) and that his only due process rights regarding that detention are those established by Congress, which at this point is limited to discretionary release under § 1182(d)(5) which he has not been granted.   Accordingly, his Petition must be denied.

## E.  MOTION FOR TEMPORARY RESTRAINING ORDER

As noted by Petitioner, to obtain temporary relief,  Petitioner "must establish that he is likely to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  (Motion, Doc. 2 at 3.)  Because Petitioner's Petition is without merit, he cannot show a likelihood of success on the merits.   Accordingly, his Motion for Temporary Restraining Order must be denied.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED:**

(A)  Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

(B)  Petitioner's Motion for Temporary Restraining Order (Doc. 2) be **DENIED**.

## V.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

However, pursuant to Rule 72(b), Federal Rules of Civil Procedure*,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: April 10, 2026

26-0505r RR 26 04 08 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge