# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amantur Mozhubaev, | No. CV-26-00505-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| Luis Rosa, Jr., | |
| Respondent. | |

Petitioner filed this action under § 2241 challenging his immigration detention and seeking a temporary restraining order. (Docs. 1, 2).  On January 28, 2026, the Court issued an Order directing Respondents to answer the Petition.  (Doc. 5).  Magistrate Judge James F. Metcalf issued a Report and Recommendation ("R&R") (Doc. 18), recommending that the Court deny the Petition.  (Doc. 12.)  The R&R finds that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and cannot challenge the length of that detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), or the Due Process Clause of the Fifth Amendment.  (*Id.*).

I.   **BACKGROUND**.

Petitioner is a citizen and national of Kyrgyzstan, who entered the United States to seek asylum on December 10, 2024.  He was detained and placed into expedited removal proceedings and was granted a "credible fear" interview.  The asylum officer found a credible fear and Petitioner was placed in removal proceedings.  Petitioner proceeded to a hearing with an immigration judge (IJ) on May 15, 2025, and was granted withholding of

removal.  The Department of Homeland Security (DHS) appealed the IJ's decision to the Board of Immigration Appeals (BIA).  That appeal is still pending.  Petitioner has remained detained since December 10, 2024. (Doc. 1 ¶¶ 1-6; Doc. 7 at 1-2.)

## II.  STANDARD OF REVIEW

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## III.  DISCUSSION.

As of the date of this Order, Petitioner has been detained for more than 15 months without any determination whether he is a danger to the community or a flight risk.  As such, Petitioner asserts that his unreasonably prolonged detention violates the Fifth Amendment. (Doc. 1 at 5-8).

### A.  Due Process.

The Court begins with Petitioner's Due Process claim.  The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

#### 1.  Liberty Interest.

The Court disagrees with the R&R that Petitioner cannot raise a due process challenge to the length of his detention.  In evaluating Petitioner's due process claim, the Court asks "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Coke*, 562 U.S. 216, 219 (2011).  "A liberty interest may arise from the Constitution itself[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "Freedom from imprisonment—from government custody, detention, or other

- 2 -

forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The R&R relies on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), to conclude that Petitioner's due process rights are limited to those provided by statute. (Doc. 12 at 8.) *Thuraissigiam* held that applicants for admission have "only those rights regarding admission that Congress has provided by statute." 591 U.S. at 140.

In *Thuraissigiam*, the respondent attempted to invoke the writ of habeas corpus "to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." *Id.* at 107. In contrast, here, Petitioner invokes the writ for its traditional purpose: "a means to secure release from unlawful detention." *Id.* (emphasis in original). Petitioner does not seek review of the merits of his immigration proceedings or authorization to stay in this country. He simply seeks a bond hearing or release from detention that he contends has become unconstitutionally prolonged. Neither a bond hearing nor release equates to admission. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, the petitioner "will be subject to the same removal proceedings as before, with no new right to remain"). Because "Petitioner does not purport to invoke any 'rights regarding admission,'" *id.* at 110, *Thuraissigiam* does not preclude Petitioner from challenging the constitutionality of his detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1092-93 (S.D. Cal. Nov. 12, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023).

Moreover, *Jennings v. Rodriguez* does not foreclose habeas relief in this case. In *Jennings*, the Supreme Court found that "§§ 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings[.]" 583 U.S. at 302. But the Court analyzed only the meaning of the statutory language and expressly declined to consider the constitutionality of such mandatory detention. *See id.* at 312; *see also Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 77073 (S.D. Cal. Nov. 4, 2020); *Banda v.*

*McAleenan*, 385 F. Supp. 3d 1099, 1105-06 (W.D. Wash. June 12, 2019).

Having concluded that Petitioner possesses a liberty interest in freedom from detention, the Court must decide what process is due. Courts in this and other circuits have wrestled with what test to use to determine whether procedural due process requires relief for a noncitizen held under § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden*, Otay Mesa Det. Ctr., No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Of the abovementioned tests, the Court finds the *Banda* test the most appropriate to Petitioner's case. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the test articulated in *Banda* more suitable than those articulated in *Mathews* and *Lopez*.[1] Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631

---

[1] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing— must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[2]

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and is], in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held under § 1225(b), the Court accordingly elects to apply the *Banda* test.

       *i.*     *Length of Detention*.

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less

---

[2]    The outcome applying *Mathews* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, the Court finds that Petitioner has a strong private interest in his liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). So, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, on the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's more than 15-month detention, undersigned concludes that due process requires he be provided with an individualized bond hearing.

reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026). Petitioner has been held in DHS custody for more than 15 months, well beyond the six-month threshold, and comparable to  the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time.").  Accordingly, the Court finds the length of Petitioner's detention strongly favors granting relief.

ii.      *Likely Duration of Future Detention*.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain, considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner.  *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

iii.     *Conditions of Detention*.

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a

bond hearing." *Id.* (citation omitted). Petitioner has not addressed the conditions of confinement in his Petition, nor has Respondents addressed Petitioner's condition of confinement. So, this factor is neutral.

> iv.    *Delays in Removal Proceedings*.

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).  Here, Petitioner has not caused any delay in his removal proceedings.  This factor thus favors Petitioner.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).  And while Respondents appealed the grant of relief to Petitioner, there does not appear to be any undue delay caused by Respondents.  This factor therefore is neutral.

> v.    *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11).  Petitioner has been granted relief from removal and while that decision is on appeal, there is no indication that decision is likely

to be overturned. Therefore, the sixth factor favors Petitioner.

> vi.    *Conclusion*.

Considering four of the *Banda* factors favor Petitioner and two factors are neutral, the Court concludes that Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.

**B.  Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 18) is partially adopted and partially rejected, as set forth above.

**IT IS FURTHER ORDERED** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** as to Petitioner's request for a bond hearing and is **denied** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **seven (7) days** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by

clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** Respondents must file a Notice of Compliance within two (2) days of Petitioner's bond hearing or release.

**IT IS FURTHER ORDERED** that any pending motions are denied as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 22nd day of May, 2026.

Honorable Diane J. Humetewa
United States District Judge